In our next case for argument this morning is Jonathan Peoples v. Cook County. May it please the Court, my name is Jon Marisi and I am counsel for appellant Jonathan Peoples. The case at hand before your honors presents important questions about a jailer making distinctions between those whose jail sentences have ended and those whose jail sentences have not. Mr. Peoples is here because he believes that the Constitution, in particular the Fourth Amendment, provides him an avenue for recovery because he was knowingly jailed for four nights after his jail sentence had ended in 2019. The facts underlying this case briefly are relatively simple. It was Friday morning, February 15, 2019, the start of a long holiday weekend, President's Day. Mr. Peoples entered a Cook County courtroom in Maywood to plead guilty to a nonviolent drug possession offense. That was a class 4 felony. He was sentenced to one year in prison, one year of mandatory supervised release. His order, this is on a pre-printed form order that has a few details changed with respect to the defendant pleading guilty, on that order it indicated that he was entitled to 217 days of credit for time served. That indisputably, in this case on this record, entitled Mr. Peoples to the end of the jail portion of his sentence. He was not to serve any more jail time at that point. I thought it was subject to a calculation of any misconduct or infractions while on probation in pretrial status, and that calculation is done by the Department of Corrections, not the Sheriff. The Illinois Department of Corrections makes the official calculation that credits him with the end of his jail sentence for the 217 days served on one year. However there's no dispute in this case that the Sheriff does that same calculation. But the law, the state law that governs this dispute provides that the calculation is formally done by the Department of Corrections and the defendant can't be released directly by the Sheriff from the sentencing proceeding, but the defendant has to be processed through the Department of Corrections. That calculation has to be formally made, even though everybody agrees on what it was in this case, and the release cannot occur until that processing through IDOC occurs. That's state law. That is not our position, Your Honor. The order that the Sheriff... I'm not asking what your position is. I'm asking what state law says. State law says that the Illinois Department of Corrections does the processing for release, that they perform that calculation. They do a few other things as a part of the processing, fingerprinting, DNA swabbing. Illinois Department of Corrections does that. The question though is what is the Sheriff permitted to do with and what is the Sheriff required to do with an individual like Jonathan Peoples whose jail term has ended and knows that the Illinois Department of Corrections... But I don't know how we're making that leap. Looking at the commitment order that says the sentencing order was you have one year in IDOC and one year of mandatory supervised release. That's the order. That's correct. And so the order is not time served. Well, the order actually indicates that he is credited with 200... It indicates versus what the order says, and so that's what we're trying to drill down is appreciating what was the judge's order. The judge's order is that he's entitled, that he's sentenced to a year, and the Illinois Department of Corrections has 217 days worth of credit, which we know as a matter of law means that the jail portion of his sentence is concluded. That would have been a determination under Illinois law going to Chief Judge Sykes' point made by the Indiana Department of Corrections. Interpreting what 217 days of credit means is something that is determined by the Illinois Department of Corrections. As a legal matter, as a statutory matter, that is correct. We know in this case that the Cook County Sheriff performed that same calculation here, performs that same calculation as a matter of course, and identifies persons like Mr. Peoples whose jail sentence has ended. They do that for purposes of facilitating transfer to the Illinois Department of Corrections. The plaintiff's, the appellant's point on this is really that it's there is a distinction there. The Illinois Department of Corrections ultimately enters that calculation. That's my terminology. But we know that that calculation is also done by the sheriff. They know who are turnarounds. They've done this for years. They did it during the pandemic. That's obviously a big point in our brief. In counsel, the state trial judge ordered Peoples to be processed by IDOC. The sentencing order didn't say sheriff release him. It said sheriff turn him over to IDOC. Now if there's some internal policy that the sheriff's allowed to do it for IDOC, that just might make sense so people aren't getting shifted around and waiting even longer. But the state trial judge did not say sheriff release Peoples, did he? He did not use the word release. What he said, what that pre-printed form order says, it says it on every one of those commitment orders, is that the sheriff is to take custody, the language is custody, of Mr. Peoples for purposes of transmitting him to the Illinois Department of Corrections ultimately for the processing. Our point is that custody includes electronic monitoring. Custody is also, obviously if you're in a jail or in a prison, that's custody. But Cook County, following your argument, Cook County could never have released him based on this order because he was not placed in the custody of Cook County. He was in the Department of Corrections. The transport was to be handled by Cook County. He was actually placed, Your Honor, in the custody of Cook County. For release? For purposes of transmitting him to the Illinois Department of Corrections. The order doesn't say how that transmittal is to occur. It doesn't dictate that it's electronic or they have to bus him or whatever. But the sheriff is to take custody and the sheriff is responsible for getting him to the Illinois Department of Corrections for that processing. No dispute there. Our point is that custody includes electronic monitoring, release on electronic monitoring, just like Mr. Peoples was for months before he came in. But that's pretrial. How could they have been permitted under this order to release him on electronic monitoring when the court has directed Cook County to transport him to IDLC? And here are the facts on that. We asked because the pandemic presented a unique circumstance, obviously. Individuals like Jonathan Peoples were being sent home during the pandemic. And the sheriff's point has always been, what are we supposed to do? We have this order. We have to put them in jail. We have to await IDOC's processing. And we've asked, of course, why not let him go home on electronic monitoring during the pandemic? Part of the sheriff's response is, well, we need an order for that. A court needs to tell us we can do that. Do you disagree? I do, based on the record that occurred during the pandemic. There has been no order of electronic monitoring release for individuals like Mr. Peoples who were released during the pandemic. They were released home, the record shows, on the same form order that says take the individual into custody, get them to IDOC. What they were doing during the pandemic, I think we've discussed at length, but they were picking the individuals like Mr. Peoples up a day or two later when it was time to transmit them for IDOC processing. This didn't occur during the pandemic. That's correct, but the evidence from the pandemic shows it creates a material factual dispute on the sheriff's position, which is that they required a special electronic monitoring order to release Mr. Peoples from custody. But there was a governor-declared state of emergency with special procedures in place for the pandemic to modify statutory law for this process. That was not the case when your client was sentenced. That is true, but the only order that's been referenced in this record is the one where IDOC was no longer receiving individuals for processing during the pandemic. They could no longer do that. There was no order relating to the Cook County Sheriff's behavior, not that we're aware of or not that's on this record. The whole pandemic issue is a total irrelevancy here, because this did not occur during the pandemic, and so the extent law was state law that the sheriff followed, and the trial court's order, which ordered the sheriff's department to take your client into custody, physical custody, not release him on electronic monitoring to report after the holiday weekend, but to take him into physical custody and deliver him to IDOC, where custody would transfer so IDOC can comply with its statutory responsibilities to calculate his time served credit and the rest of the processing that goes on when IDOC receives a post-conviction, post-sentence prisoner. We dispute that the order doesn't say physical custody. It says take people into custody and deliver him to the Illinois Department of Corrections, and that the department take him into custody and confine him in a manner provided by law until the sentence is fulfilled. That's correct. Under state law, IDOC has the sole authority for processing prisoners and calculating pretrial credit and applying pretrial credit. That is correct. However, the question is what to do and what are you able to do with Mr. Peoples when you know that he'll be... No, it's not. The question is what the law required the sheriff's department to do. Not whether the sheriff had some unknown, unrecorded discretion that's... There is no discretion under state law or under the court's I believe that there is discretion. And where is that found? It's found by the order itself, which does not require physical custody and it is found... It's not in the order. There's no valid argument that the sentencing court's order gave the sheriff discretion to let him go. It says precisely the opposite. On this record, there's no difference in terms of court orders with respect to what the sheriff did during the pandemic. The pandemic is an irrelevancy here because this sentencing did not occur during the pandemic. I understand. So you need to cite a source of legal authority to support your argument that there was an over-detention here. It is Illinois law that says custody is also electronic monitoring and when you know in advance that Mr. Peoples and others of course like him spend four days in county jail when their jail term has prolonged detention. I see my time has long diminished, Your Honor. Thank you. Mr. Burns. Good morning and may it please the court. Daniel Burns on behalf of defendants Cook County and Thomas Dart. As a convicted felon under sentence, Peoples cannot establish a violation of his rights when he was detained by the sheriff pursuant to a lawful order of the Circuit Court of Cook County pending his transfer to the Illinois Department of Corrections. Under Illinois law the Illinois Corrections, not the sheriff, must calculate Peoples' sentence and release date and process him onto mandatory supervised release. Nor can Peoples show deliberate indifference on the part of the sheriff which defeats his claims under the 8th and 14th Amendment as well as under Monell. Peoples was transported by the sheriff to the Illinois Corrections at the earliest possible time allowed following his guilty plea. Peoples' time spent in custody was a result of his felony conviction on a Friday afternoon preceding a holiday weekend. The Circuit Court's order committing him to the sheriff's custody pending transfer to the Illinois Department of Corrections, the Illinois Department of Corrections statutory duty to calculate sentence and complete their processing and the Illinois Department of Corrections hours of operation. The District Court properly granted summary judgment in favor of defendants. Peoples cannot meet the elements under Monell. Peoples' failure to establish that he suffered a constitutional violation precludes a finding of liability against the sheriff under Monell. Separately, Peoples cannot establish that any sheriff's policy was a moving force behind his alleged constitutional deprivation. Illinois law requires every felon sentenced to imprisonment to serve a term of mandatory supervised release. Here, plaintiff received a felony sentence of one year in prison and a term of one year mandatory supervised release. Both these terms make up his felony sentence. Illinois law also requires the Illinois Department of Corrections to calculate Peoples' sentence and process him onto mandatory supervised release. Illinois Corrections requires their own staff to do this and the sheriff has no legal authority to perform these procedures. They are solely the duty of the Illinois Department of Corrections. Peoples' commitment order required the sheriff to take him into custody to deliver him to the Illinois Department of Corrections. The hours of operation for the Illinois Department of Corrections ends at 1.30 p.m. Mondays through Fridays and they are closed on holidays. Peoples was brought to the Illinois Department of Corrections at the earliest time the hours would allow, which was Tuesday morning following the federal and state holiday for President's Day. Here, any injury Peoples contends he suffered was due to Illinois law, including its delegation to the Illinois Department of Corrections to calculate a prison sentence and release and process him onto mandatory supervised release, not the sheriff's policies. Peoples also cannot show deliberate indifference. Because he cannot show deliberate indifference, his claims fail under the 8th and 14th Amendment as well as under Monell. As mentioned, Peoples was detained pursuant to the Circuit Court of Cook County's commitment order pending transfer to the Illinois Department of Corrections, which was statutorily required to calculate his sentence, ensure that it's been fulfilled, and then process him onto mandatory supervised release. Again, in order to facilitate this process, the sheriff segregates the Illinois corrections orders from other court paperwork, they arrange travel and transport to the Illinois Department of Corrections, they email ahead of time the prisoner's corrections orders, and they ensure that commitment orders and prisoners are transported on the next business day following their commitment. Because the sheriff had no legal authority to calculate Peoples' release date and process him onto mandatory supervised release, Peoples cannot show that the sheriff was deliberately indifferent when detained pursuant to the lawful order of the Circuit Court of Cook County pending transfer to the Illinois Department of Corrections. Does Illinois law permit electronic monitoring as a sentencing option in addition to a pretrial monitoring option? Illinois, while that part is somewhat unclear, during the pandemic, judges were ordering certain people onto electronic monitoring following a guilty plea. But again, the sheriff has no authority to decide to release someone on electronic monitoring. It has to be about non-pandemic conditions. Since this occurred before the pandemic, what does Illinois law say about electronic monitoring as a sentencing option? I don't think it says anything, Your Honor. I think this was done given the exigencies of the problem of the pandemic that Cook County judges started doing that. So I'm not aware that this would be allowed. In fact, especially in this case, he's been convicted at this point and sentenced to imprisonment. So pre-pandemic, I'm not aware that this was ever done. Once the judgment of conviction is entered, sentencing has occurred, judgment of conviction has entered, there's no other route but to go to Stateville for processing. That's correct, yes. Under Illinois law. That has to happen in every case. That's right. Even these turnarounds. Yes, they go in and then they're brought by the sheriff to Stateville. And during weekdays, that process can be accomplished on the same day? I don't know if it can be. I believe it's brought the next day. Given the court dates, there's numerous courthouses in Cook County. So everyone's brought back, there's processing at the jail and then they're brought to Stateville. And it's all done at Stateville? The Illinois Department of Corrections processing is done at Stateville. And how far from Cook County is that? It's 32 miles. It's right outside of Juliette. Okay. So defendants who have been ordered to electronic monitoring during the pretrial phase of the case always have to go to Stateville for processing post-conviction regardless of their turnarounds or if they're going to have time left to serve. Yes. They'll be brought into custody by the sheriff and then brought to Stateville, correct. And as a practical matter, that process is going to take at least one night at Stateville? Well, no. I believe it's much quicker once they arrive at Stateville. So sometimes it can be done in one day? For a turnaround? Sure. For Illinois Department of Corrections as opposed to the sheriff's processing. Yes. And if the court has any further questions? Okay. Thank you. Thank you. Mr. Marisi, your time has expired. I'll give you an extra minute for rebuttal. Thank you, Your Honor. Just very briefly to address a couple of factual points at the end there. In terms of when a turnaround goes to the Cook County Jail to await transfer to Stateville, the record is that never occurs the same day. At the earliest, it would occur the next day. IDOC's schedule is such that they don't accept individuals on Wednesdays. So if you pled guilty on Tuesday, you wouldn't go to Stateville on Thursday. The record is that typically when you get to Stateville, you are out the same day. It's a very quick process of photographing, fingerprinting. So Cook County is the log jam? In terms of time? For turnarounds. Plus the holiday weekend feature of this particular case. That's right. And the feature that they don't go out any day after 1.30 p.m. and that all Wednesdays are not a day you can go out. So there are waits at Cook County as a matter of course. That's the one fact. The second one is with respect to the requirement that they go to Stateville to have the processing done on February 15th to 19th, 2019. That was the process. I am not certain that the County would be better to speak to this, but there is evidence that that has changed to some degree. Alright, thank you. Thanks to both Councils, to all Councils. The case is taken under advisement.